**Ambrocio P. IGONIA**

v.

**Joseph A. CALIFANO, Jr., as Secretary of Health, Education and Welfare, Appellant.**

**No. 76–1462.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 5, 1977.

Decided Nov. 17, 1977.

---

Ross E. Campbell, Atty., Dept. of Health, Ed. and Welfare, Washington, D. C., for appellant. Rex E. Lee, Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellant. Earl J. Silbert, U. S. Atty., and Morton Hollander and Michael F. Hertz, Attys., Dept. of Justice, Washington, D. C., also entered appearances for appellant.

Louis Fireison, Washington, D. C., for appellee.

Before TAMM, LEVENTHAL and MacKINNON, Circuit Judges.

TAMM, Circuit Judge:

Appellee Ambrocio P. Igonia commenced this action in the United States District Court for the District of Columbia, seeking review, under section 205(g) of the Social Security Act,[1] of a final decision of the appellant Secretary of Health, Education and Welfare (HEW) which denied appellee's application for the establishment of a period of disability and the payment of disability insurance benefits. The district court granted appellee's motion for summary judgment, and reversed the decision of the Secretary. We vacate the order of the district court and remand the case to that court with the instruction to remand to the Secretary for further proceedings consistent with this opinion.

I

On February 2, 1970, appellee, a citizen and resident of the Republic of the Philippines, filed an application with the Social Security Administration (SSA) for the establishment of a period of disability and the payment of disability insurance benefits under the Social Security Act (Act), alleging that he became disabled in 1950 due to pulmonary tuberculosis.[2] To qualify for disability insurance benefits, an applicant must be disabled as of the last date on which he or she qualifies for insured status.[3] This date is determined according to the number of quarters of coverage earned by the claimant while employed or otherwise engaged under the Act. Appellee's claim to insured status is based exclusively on military service wage credits for service as a Philippine Scout from May 1941 through June 1946.[4]

Appellee's application was denied initially by the SSA's Bureau of Disability Insurance because it was found that he was not disabled as of June 30, 1951, the last date on which he was on insured status.[5] The appellee requested reconsideration, and the Bureau affirmed its earlier determination, stating, however, that the last date on which appellee was on insured status was March 31, 1947.[6] Upon request for a hearing, the application was reviewed de novo by an administrative law judge (ALJ), who held that the appellee was not disabled as of the last date of his insured status, which the ALJ found to be June 30, 1951.[7] The

---

1. 42 U.S.C. § 405(g) (1970).

2. *See* Administrative Record (Admin.Rec.) at 26.

3. *See* 42 U.S.C. §§ 416(i), 423 (1970).

4. *See* Admin.Rec. at 27, 92. For Social Security coverage determinations, any World War II veteran is deemed to have been paid wages of $160.00 in each month during any part of which he or she served in the active military forces of the United States during World War II. 42 U.S.C. § 417(a) (1970). For coverage purposes, World War II is deemed to have begun on September 16, 1940, and to have

ended on July 24, 1947. 42 U.S.C. § 417(d) (1970); 20 C.F.R. § 404.1302 (1977). Social Security Administration regulations include as a veteran any member of the Philippine Scouts who performed active services during World War II under the direct supervision of recognized military authority. 20 C.F.R. § 404.-1304(a)(3) (1977).

5. Admin.Rec. at 40.

6. *Id.* at 46–47.

7. *Id.* at 19–24.

Appeals Council of the SSA affirmed the decision of the ALJ, making that determination the final decision of the Secretary of HEW.[8]

On December 28, 1973, the appellee filed an action under 42 U.S.C. § 405(g) (1970) in the United States District Court for the District of Columbia, seeking review of the Secretary's decision. Pursuant to section 405(g), the Secretary moved to remand the case "in order that the Appeals Council . . . may undertake further administrative action with regard to plaintiff's claim."[9] This motion was granted, and on July 8, 1975, the Appeals Council vacated its earlier decision, and modified, supplemented, and affirmed the ALJ's decision.[10] The Appeals Council conceded that the appellee was disabled due to pulmonary tuberculosis as early as the fall of 1949,[11] but held that the ALJ's determination of June 30, 1951, as the last date of insured status was "not supported by evidence of the record," finding rather that March 31, 1947, was the last date of insured status.[12]

As had the Bureau of Disability Insurance, the Appeals Council reached its conclusion concerning the March 31, 1947, insured status date by not crediting the appellee with military service during the period July 3, 1942, through March 5, 1945. The Philippines were occupied by the Japanese at that time, and appellee maintains that he was part of the organized underground movement during this period.[13] He supports this contention with two sworn affidavits, signed by individuals who claim to have been his commanding officers during the period in issue, both maintaining that appellee performed duties with a duly recognized guerilla organization.[14]

The Appeals Council considered these affidavits, but found, citing SSA regulations,[15] that a form entitled "Certification by Uniformed Services," which is completed by the armed services at the request of the SSA, was "the most credible evidence of the dates of the claimant's military service . . . ."[16] The certification in this instance indicated that appellee was missing in action and was not engaged in recognized guerilla activity from July 3, 1942, through March 5, 1945.[17] Because this status is not deemed creditable military service for social security benefit purposes,[18] the Appeals Council found that appellee was not entitled to military wage credits for the period in question.[19] Subtracting these credits from the appellee's total service resulted in the determination that March 31, 1947, was the last date of insured status.

On motion, the district court reversed the decision of the Secretary and granted summary judgment in favor of the appellee. Noting that the Secretary's findings of fact are conclusive only if supported by substantial evidence,[20] the court stated that

the Appeals Council's denial of military wage credits from July 3, 1942 to March 5, 1945 and the conclusion that plaintiff's eligibility expired on March 31, 1947 are not supported by the evidence of record and are in error as a matter of law. The evidence of record supports the Appeals Council's initial adoption of June 30, 1951

---

**8.** *Id.* at 14.

**9.** Record at 3. It is noteworthy that the remand was not requested solely for the purpose of obtaining additional *medical* evidence, as the appellee contends. Brief for Appellee at 5–6.

**10.** Admin.Rec. at 4–9.

**11.** *Id.* at 8.

**12.** *Id.* at 6–7.

**13.** *Id.* at 92.

**14.** *Id.* at 96–97.

**15.** 20 C.F.R. § 404.1322 (1977).

**16.** Admin.Rec. at 7.

**17.** *Id.* at 37, 74.

**18.** *See* Social Security Administration Claims Manual § 1806.1.

**19.** Admin.Rec. at 7.

**20.** 42 U.S.C. § 405(g) (1970).

as the date on which plaintiff last met the insured status requirement.[21]

This appeal ensued.

## II

Appeals under the Social Security Act do not come before this court in the same manner as do most administrative cases, because the very explicit judicial review section of the Act requires that appeals of the HEW Secretary's decisions must be brought first in the appropriate district court.[22] Nevertheless, when the court is presented, as in this instance, with a question of the validity of the way in which the Secretary has resolved a question of fact, our function remains the same as in the more typical administrative case: to determine "[w]hether on the record as a whole there is substantial evidence to support agency findings . . . ." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951); *see Carnevale v. Gardner*, 393 F.2d 889, 891 (2d Cir. 1968). *See also Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

In this case, the critical question before the agency was whether the appellee was engaged in recognized guerilla activity during the period July 3, 1942, through March 5, 1945. The evidence on this question is scant indeed. In support of the Secretary's contention that appellee was not so engaged is the uncorroborated Certification by Uniformed Services. Appellee counters only with the equally uncorroborated affidavits of his former commanding officers. This lack of evidence may be due to the fact that the critical issue earlier in this proceeding was whether the appellee was disabled; the question of the appropriate insured status date became of crucial importance only after the appellee's disability was no longer under challenge.

Whatever the reason, it is clear to us from our review of the entire record that the question of the appellee's status from July 3, 1942, through March 5, 1945, was never fully investigated by the agency. Without the findings which would accompany a detailed and diligent investigation by the agency, we find ourselves unable to fulfill the duty entrusted to us, that of determining whether the Secretary's decision is in accordance with the Act. *See Carnevale v. Gardner*, 393 F.2d at 891.

Had this been a typical civil action, there is little doubt that the district court would have sought corroboration of the three key documents in question here. However, in social security cases, the district court performs an essentially appellate function, and additional evidence, as is certainly required here, is obtained by remanding the case to the Secretary.[23] While a remand request is normally made by a party, there is no reason why a court may not order the remand *sua sponte*. *Pelletier v. Secretary of HEW*, 525 F.2d 158, 160–61 (1st Cir. 1975); *Bohms v. Gardner*, 381 F.2d 283, 286 (8th Cir. 1967), *cert. denied*, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968); *see Carnevale v. Gardner*, 393 F.2d at 891 n.1. All that the Act requires is "good cause shown," and we believe the patent conflict between the documents in question in this case is sufficient good cause for a remand.

There is an additional reason why remand is appropriate in this instance. It is settled law that an agency is bound to follow the rules it establishes, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *see Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957), and HEW has failed to do so in this case. The same SSA regulation which the Appeals Council cited in support of the proposition that the military certification is the "most credible evidence" of appellee's military service indicates that "[o]ther evidence of probative value" is to be given equal weight in the determination of military ser-

---

**21.** Record at 8.

**22.** 42 U.S.C. § 405(g) (1970).

**23.** *Id.*

vice periods.[24] The record and appellant's brief are replete with allegations that a large number of fraudulent social security claims have emanated from the Philippines, and perhaps this fact is the reason that little, if any, weight was given to appellee's supporting affidavits.[25] Certainly, however, the information contained in these documents, if verifiable, is "evidence of probative value," and it was incumbent on the Secretary to attempt to establish, or disestablish, the veracity of the affidavits. This responsibility is all the more apparent when one looks closely at the SSA Foreign Claims Manual, section 3680 (1972), which states:

> In view of these experiences with Philippine claims, certifications of Philippine records . . . should not be routinely accepted without considering all other allegations and evidence in file, as well as all information available to the Social Security Administration and the Veterans Administration concerning the location and probative value of various Philippine source records. *Whenever there is doubt as to the probative value of the evidence submitted, the United States Veterans Administration Regional Office in Manila will be asked to establish the accuracy of the evidence on which payment will be based.* (emphasis added)

It is clear, therefore, that steps should have been taken to attempt to corroborate the information contained in appellee's supporting affidavits, and the purpose of our remand in this case is to enable the Secretary to do precisely that, in accordance with his established procedures. The Veterans Administration Regional Office in Manila should attempt to obtain any available records of the guerilla organization with which appellee alleges to have been associated, to determine if appellee's name appears for any reason: *e. g.,* induction, pay, equipment issue, disciplinary action. It should also attempt to question further the appellee,

Messrs. Guevarra and Manosca (appellee's alleged commanding officers), and any other individuals with personal knowledge of appellee's underground service. At the same time, the Secretary, in concert with his counterpart at the Department of Defense, should do whatever is possible to corroborate the Certification by Uniformed Services. At the very least, the individual who initially completed the form should be deposed to establish how he or she reached the conclusion that appellee did not participate in recognized guerilla activity during the period in question.

Regardless of the course of action selected by the Secretary, we direct that he proceed with this investigation on a priority, expedited basis. The claim is now well over seven years old, and the majority of this time was spent contesting the existence of the appellee's disability, which is now conceded. The investigation has been reduced to a single question of fact, which, with proper attention, can be quickly resolved. True, the Secretary's ultimate determination may result in a "judgment call," but the judgment will certainly be more informed than those previously made in this case.

### III

There are two points which we wish to make in closing. Appellee has called to our attention the case of *Salinas v. Richardson,* No. 72–2574 (9th Cir., filed Mar. 14, 1973), which he contends casts doubt on the continuing validity of the SSA Claims Manual provision, relied upon by the Secretary in this case,[26] which denies service credit for missing-in-action periods unless the claimant participated in recognized guerilla activity.[27] We do not agree with this contention. In *Salinas,* the claimant, a Philippine Scout, had been released from Japanese

---

**24.** 20 C.F.R. § 404.1322(e) (1977); *see* notes 15 & 16 *supra,* and accompanying text.

**25.** We also note that appellee himself was involved in another's fraudulent claim in 1951. Admin.Rec. at 90–91. Even this fact, however, does not justify summary rejection of his supporting affidavits without further investigation into their veracity.

**26.** *See* note 18 *supra,* and accompanying text.

**27.** Brief for Appellee at 6 n.2.

custody still suffering from a serious head wound, and he remained at his home convalescing until U.S. forces returned to the Islands. The Secretary denied the claimant any service credit for the convalescent period, because he was not under military supervision or engaged in recognized guerilla activity. The Ninth Circuit reversed the Secretary's denial of benefits, holding that during this period, the claimant "continued as a casualty of war and had not the physical capacity to return to useful civilian life [and this fact] is sufficient to constitute his status as in continuing military service under the Act." We agree with this holding, but believe that it casts doubt not on the Claims Manual as a whole, but only on the Secretary's interpretation of it in Salinas' case. The holding also is of little support to appellee in the present case. There is evidence in the record that appellee convalesced at home "for about a year" following his release from Japanese custody,[28] but even the addition of this year to his term of service would not advance his last date of insured status to the required date in the fall of 1949.

■ Our second closing point is a procedural one. This case is before us on an appeal of a summary judgment in favor of appellee, and we think it starkly illustrates the impropriety of using summary judgment in deciding a case under the Social Security Act. In almost every case brought in district court under the Act, the issue before the court is the substantiality of the evidence upon which the Secretary based his findings of fact. The Act directs the court to enter its judgment upon the pleadings and the transcript of the record.[29] There is not room, as is normally the case in a motion for summary judgment, for consideration of depositions and interrogatories in order to determine whether any dispute of fact exists, and if so whether it is bona fide. If the case is one that involves the taking of additional evidence for any reason, the district court is obliged to obtain an enhancement or revision of the record by way of remand to the Secretary.[30] Thus, the court should more correctly enter either a judgment on the pleadings, Fed.R.Civ.P. 12(c), or an order pursuant to a motion under Fed.R.Civ.P. 7(b)(1). *See Torphy v. Weinberger,* 384 F.Supp. 1117, 1119 (E.D. Wis.1974).

## IV

For the foregoing reasons, we vacate the judgment of the district court and remand to that court with the instruction to remand to the Secretary so that he can investigate further the question of appellee's status during the period July 3, 1942, through March 5, 1945. As stated above, it is our intent that the Secretary make every effort to conclude this investigation as expeditiously as possible.

*Vacated and remanded.*

---

28. Admin.Rec. at 92. *But see id.* at 96–97 (supporting affidavits indicate appellee allegedly was inducted into the guerilla unit less than one month after release from Japanese custody).

29. 42 U.S.C. § 405(g) (1970).

