**APEX OIL COMPANY, Plaintiff,**

v.

**FEDERAL ENERGY ADMINISTRATION et al., Defendants.**

Civ. A. No. 76–1067.

United States District Court, District of Columbia.

Dec. 15, 1977.

Alfred Lawrence Toombs, Batzell, Nunn & Bode, Washington, D. C., for plaintiff.

Elizabeth Langer, Atty., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This matter is before the Court on cross-motions for summary judgment. In this action, plaintiff Apex Oil Company (Apex) seeks review of a final decision and order issued by defendant Federal Energy Administration (FEA) denying plaintiff's application for fee-exempt import licenses for the importation of finished petroleum products and for rebate of license fees that plaintiff paid to the Government in the amount of $78,266.94. Apex is an independent petroleum terminal operator and marketer of residual fuel oil, No. 2 fuel oil, and motor gasoline throughout the Missouri, Illinois, and Iowa area. The FEA's Office of Exception and Appeals has authority to consider fee-exempt licenses and refunds. Apex contends that the FEA, in considering applications for such licenses and refunds, applied a more stringent standard to Apex than did the FEA's predecessor, the Oil Import Appeals Board (OIAB).

In its motion for summary judgment, plaintiff argues that such departure from the criteria previously established by the OIAB without adequate explanation is "arbitrary and capricious" in violation of Section 706(2)(A) of the Administrative Procedure Act (APA). Apex further contends that the FEA was bound by the doctrine of equitable estoppel to grant the requested licenses. Finally, Apex claims that it was denied procedural due process, because its application and appeal were considered by the same individuals within the FEA. Defendants seek summary judgment on the basis that the agency decision was neither a departure from OIAB precedents nor arbitrary and capricious, equitable estoppel is inapplicable to the instant case, and the FEA's review of plaintiff's application comported with due process. For the reasons hereinafter stated, the Court will grant summary judgment in favor of defendants on all claims.

## BACKGROUND

Authority for the present license fee system for oil imports derives from Presidential Proclamation 3279, 24 Fed.Reg. 1,781 (1959), which authorized the imposition of quotas on the importation of petroleum products in the United States. The quota system was abolished, and a license system substituted. Proclamation 4210, 38 Fed. Reg. 9,645 (1973). The Oil Import Appeals Board (within the Department of the Interior) was authorized to grant fee-exempt import licenses to established independent marketers "who are experiencing exceptional hardship, or in emergencies in order to assure, insofar as practicable, that adequate supplies are available" and refunds of license fees previously paid by importers who subsequently became entitled to fee-exempt licenses. 38 Fed.Reg. 19,820 (1973).

Pursuant to the Federal Energy Administration Act (FEAA), 15 U.S.C. § 761 et seq. (1974), the functions of the Secretary of the Interior in regard to import licenses were transferred to the Administrator of the FEA; the OIAB continued as an entity within the FEA.[1] Upon the abolition of the OIAB, effective August 15, 1975, the Office of Exceptions and Appeals assumed the duties of the OIAB. 40 Fed.Reg. 36,554, 36,558–559 (1975).

At the time of the transfer of functions to the FEA, the FEA stated in a Notice of Proposed Rulemaking that only procedural, not substantive, changes would result from the transfer. Further, in the announcement accompanying the implementing regulations, the FEA stated:

FEA recognizes that the criteria for relief under Proclamation No. 3279, as amended, are broader than those generally applicable under [10 C.F.R., Part 205] Subpart D. Accordingly, § 205.55(b)(2) is amended to provide that with respect to exceptions from the base fee, the Office of Exceptions and Appeals shall utilize the criteria applicable under the Procla-

1. The general standard for the award of license fee exemptions and refunds is set forth in 10 C.F.R. § 205.50(a)(2)(1) (1977). The regula-

tions governing the oil imports program are set forth in 10 C.F.R. § 213 (1977).

mation, rather than the general criteria applicable with respect to exceptions from other FEA programs. In applying these criteria, it will be FEA's policy to follow the basic approach of the Oil Import Appeals Board.

40 Fed.Reg. 36,555 (1975). On June 17, 1975, in a meeting with representatives of independent marketers, Robert Montgomery, then General Counsel of the FEA, and George Breznay, then Acting Chairman of the OIAB, similarly represented that the transfer would be merely procedural.

During the period from 1970 to August, 1975, when OIAB had jurisdiction over grants of license fee exemptions and refunds, Apex was granted seven fee-exempt licenses to import 6,548,000 barrels of fuel oil and other finished products. The last exemption granted by the OIAB to Apex was on January 9, 1975. However, the Office of Exceptions and Appeals, since its assumption of jurisdiction, has denied one application by Apex for a fee-exempt license [2] in addition to the instant application.

Apex imported 745,403 barrels of gasoline during August and September of 1975 and expended $78,266.94 for license fees. It contends that it would not have imported these cargoes if it had not been assured that the standard for awarding fee-exempt licenses would remain the same. On March 8, 1976, the Office of Exceptions and Appeals denied Apex's application for fee-exempt licenses and license rebates for the importation of the above-stated cargo. 3 FEA ¶ 83,121 (1976). The decision was affirmed on appeal on April 28, 1976. 3 FEA ¶ 80,623.

## MERITS

This action does not involve a review of the agency's findings of fact, where judg-

ment upon the pleadings rather than summary judgment is appropriate.[3] Rather, this case involves a claim that the agency departed from precedent without adequate explanation as well as a due process challenge. Because summary judgment is a proper form in which to present these claims to the Court, affidavits and other information outside the administrative record had been considered. The Court finds that there are no genuine issues as to any material facts with respect to the three claims before the Court. The Court therefore concludes that it is appropriate to resolve the entire matter on summary judgment.

## I. Departure From Established Precedent.

Plaintiff contends that the FEA Office of Exceptions and Appeals, in denying it a fee-exempt license and rebate, deviated from OIAB precedent without adequate explanation, thus rendering the decision arbitrary and capricious. The Court finds, however, that the FEA has adequately explained its departure from precedent.

The Court of Appeals for the District of Columbia Circuit has recognized the claim that an agency's departure from established precedent without any explanation is arbitrary and capricious in violation of Section 706(2)(A). *See, e. g., Garrett v. FCC,* 168 U.S.App.D.C. 266, 513 F.2d 1056 (1975); *Greater Boston Television Corp. v. FCC,* 143 U.S.App.D.C. 383, 444 F.2d 841, *cert. denied,* 403 U.S. 923, 91 S.Ct. 2229, 2233, 29 L.Ed.2d 701 (1971). It has required that "[a]n agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored." *Greater Boston Television Corp. v. FCC, supra,* at 852. As the same court has recently stated,

---

**2.** While Apex filed this application for a fee exemption earlier than its application in the instant case, the application for exemption concerned fuel oil imported during the same allocation period. The Office of Exceptions and Appeals denied Apex's appeal on January 12, 1976. 3 FEA ¶ 80,547.

**3.** *See Igonia v. Califano,* 186 U.S.App.D.C. ——, at ——, 568 F.2d 1383, at 1387 (D.C.Cir. Nov. 17, 1977). The Court would not grant plaintiff's motion for judgment on the pleadings, even if it had directly challenged the agency decision as being arbitrary and capricious in violation of Section 706(2)(A) of the APA.

the function of a reviewing court in cases of this nature is to ensure that the agency has

> provide[d] an opinion or analysis indicating that the [previous] standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law.

*National Citizens Comm. for Broadcasting v. FCC,* No. 76–1351, 186 U.S.App.D.C. ——, at ——, 567 F.2d 1095, at 1099 (D.C.Cir. Nov. 11, 1977).

■ In order to establish a violation of the APA in this case, however, it must be demonstrated that (1) the agency's change in the application of the established criteria was significant enough to require an explanation; and (2) if such a change is determined, whether the agency failed to provide adequate explanation. Plaintiff fails to meet this burden.

■ The FEA, in its initial decision, concluded that Apex had "failed to make a convincing showing that exception relief is necessary to alleviate an exceptional hardship or supply shortage." It found that Apex's submissions were generally unsubstantiated and speculative. It found that plaintiff did not provide any evidence to support its claim that it would experience a supply shortage. The FEA also concluded that Apex failed to demonstrate that it would not be able to obtain sufficient quantities of oil on the surplus market, as it had in the past, or that the firm would not be able to effect product exchanges. 3 FEA ¶ 83,121, at 83,445. Finally, the FEA found the following information to be significant:

> [I]nformation which has been furnished to us by the General Fuels Division of the FEA Office of Regulatory Programs directly contradicts Apex's contention that it has insufficient product to meet the needs of its customers. That Office reports that Apex has declared substantial volumes of motor gasoline and No. 2 fuel oil as surplus product during each month of the current allocation period. Between May and December of 1975, Apex stated that its surplus No. 2 fuel oil ranged from xxxx to xxxx barrels per month and its surplus motor gasoline

ranged from xxxx to xxxx barrels per month. Apex's Application for Exception contains no reference to the fact that the firm has been declaring surplus product on a monthly basis. In light of statements contained in the exception application concerning Apex's alleged inability to obtain sufficient product to meet its supply requirements, its failure to report its continuing surplus product situation might well be considered an omission of a fact material to the FEA's evaluation of the exception request.

3 FEA ¶ 83,121, at 83,446. The FEA concluded that "[i]n view of its current surplus situation regarding motor gasoline and No. 2 fuel oil, the FEA has determined that the firm's claim that it is experiencing a supply emergency is wholly unsubstantiated." *Id.*

On appeal, the FEA noted that the sole basis for Apex's appeal was that the agency failed to comport with previous OIAB precedent; Apex did not challenge any specific findings. Apex argued to the FEA that it was entitled to relief in the instant case, because Apex had been granted seven fee-exempt licenses by the OIAB, and because the FEA, at the time it assumed jurisdiction, indicated that it would follow the precedents of the OIAB. The FEA disposed of this issue by quoting its response to the same contention in an earlier case:

> The program under which fee-exempt licenses are granted to independent marketers is specifically constructed to require each firm to reapply for relief each allocation period. Part of that reapplication procedure requires that an applicant provide current information concerning various aspects of the firm's import situation. The necessity to reapply and provide current data was designed to enable the Board and the FEA to make a periodic and separate determination as to the propriety of exception relief. Although Kickapoo might have qualified for exception relief in the past, the record in this proceeding does not contain a persuasive showing that similar relief is warranted at the present.

*Kickapoo Oil Co.,* 3 FEA ¶ 80,517, at 80,580 (1975).

Plaintiff contends that the denial of the application resulted from the change in criteria by which "exceptional hardship" and "supply emergency" are judged rather than from plaintiff's failure adequately to substantiate its claims. Apex compares the financial information submitted in the instant application to the FEA with that submitted in an application to the OIAB ten months earlier. Notwithstanding the fact that plaintiff submitted more financial information in the instant application, the license fee exemption was denied in the instant case, while it was granted in the earlier case. Plaintiff claims that the FEA imposed significantly higher evidentiary requirements and applied more stringent criteria than those previously applied by the OIAB. It contends that the FEA has mentioned only two of the five criteria applied by the OIAB. Finally, plaintiff contends that although applications for fee-exempt licenses and rebates were judged by the same criteria in the past, the FEA is applying a different standard to applications for license fee rebates than for license fee exemptions. In further support of its claim, plaintiff compiled statistics on decisions made before and after the transfer of jurisdiction to the Office of Exceptions and Appeals, which indicate a marked decrease in the percentage of applications granted since the FEA assumed jurisdiction.[4]

Since the determination whether the agency has substantially departed from OIAB precedent involves an interpretation of law, the Court may resolve the issue on summary judgment. The Court does not find the FEA's change in standard to be significant enough to constitute a reversal of the OIAB precedent. Nevertheless, it does agree with plaintiff that there has been a change in the application of the standard and that therefore some explanation is warranted. However, the Court concludes that, in light of the relatively insubstantial nature of the change, the FEA's explanation is wholly adequate and fully consonant with the precedents under the APA.

A comparison of the instant application with the most recent Apex petition granted by the OIAB on January 9, 1975, reveals that Apex submitted much more information in support of its petition in the instant case. The FEA and the OIAB have applied the following criteria in considering applications for fee-exemption: (a) critical supply situation; (b) difficulty in maintaining competitive position; (c) the needs of the customers and the community served; (d) facilitation of product exchanges; and (e) the public interest in preserving the independent segment of the petroleum industry. However, the FEA scrutinized each of these established factors more rigorously in the instant case than did the OIAB. For example, the OIAB addressed the supply shortage factor very cursorily:

> [Each petitioner] has demonstrated to the Board that it is experiencing a domestic supply shortage or anticipating encountering such a shortage within the immediate future. Each desires to import additional finished product in order to compliment [*sic*] its domestic supply. However, the payment of license fees added to the already high cost of foreign finished product may hamper petitioners' competitive positions. Accordingly, each has requested an exemption from the license fee on the quantity each seeks to import.

*Consolidated Decision* (Jan. 9, 1975). In contrast, the FEA in the instant case concluded:

---

4. In brief, plaintiff's statistics indicate that during the period in which OIAB had jurisdiction of applications for license fee exemptions or rebates, approximately eighty percent of the applications were granted in whole or in part, six percent were dismissed, and six percent were denied. The Office of Exceptions and Appeals, since its assumption of jurisdiction, granted 38 percent, denied 38 percent, and dismissed 23 percent of the applications. *See* Affidavit of William H. Bode. Defendants contend that these figures could be explained by a number of factors, including the fact that the procedures for applications were changed and greater substantiation of applications was required. *See* 41 Fed.Reg. 22,341–343 (1976); 40 Fed.Reg. 36,555–556 (1975).

Based upon the information which Apex has submitted in support of its Application for Exception, the FEA has determined that the firm has failed to make a convincing showing that exception relief is necessary to alleviate an exceptional hardship or supply emergency. The contentions set forth by the firm are generally based upon speculation and unsubstantiated by factual material. For example, Apex's claim that it will experience a supply shortage on a continuing basis is based in part on the firm's assumption that natural gas curtailments this winter will significantly increase the demand for No. 2 fuel oil used as a replacement for the natural gas. However, Apex has failed to provide any evidence that such a course of events has occurred or is likely to occur in the foreseeable future. Apex's contentions in this regard are therefore purely speculative in nature and do not form an appropriate basis for exception relief.

3 FEA ¶ 83,121, at 83,445. However, upon review of the prior decisions of the OIAB, the recent decisions of the FEA Office of Exceptions and Appeals, and the instant appeal of the FEA Office of Exceptions and Appeals decision, the Court concludes that the FEA has merely applied the established standard more stringently. This conclusion is further supported by the fact that at the time of the transfer of jurisdiction to the FEA, procedures for applications for license fee exemptions and rebates were changed and greater substantiation of applications was required. See 41 Fed.Reg. 22,341–343 (1976); 40 Fed.Reg. 36,555–556 (1975).

In *Kickapoo Oil Co.*, 3 FEA ¶ 80,517 (1975), in which the FEA denied a license fee exemption application submitted several months prior to the instant case, the FEA addressed this same issue of departure from precedent:

Kickapoo states that the Board did not request financial projections and that insofar as the FEA now requests such information, it has departed from the Board's operating procedures and has made substantive changes which have altered the exceptions process regarding fee-exempt licenses. It is true that the FEA now requests certain information which the Board did not regularly seek in the past. However the FEA's review of such information is not intended to result in the deprivation of exception relief to any firm. Rather, the information currently sought by the FEA is intended to permit a more comprehensive analysis of each exception request and the consideration of all possible grounds upon which exception relief might be extended to any particular firm. Moreover, the scope of exception relief as currently set forth in Section 205.50 is virtually identical to that under which the Board previously operated, i. e., exception relief is appropriate upon a showing that an applicant firm will experience a supply emergency or exceptional hardship in the absence of exception relief, as specified in Section 205.50. Therefore the FEA finds that no substantive changes have been incorporated into the procedures under which requests for fee-exempt licenses are processed.

3 FEA ¶ 80,517, at 80,579–80 (footnotes omitted). The Court concludes that this explanation of the change in application of criteria is sufficient. It appears from this explanation and the recent FEA decisions that FEA intends more vigorously to apply the existing criteria. The explanation is satisfactory, particularly in light of the apparent thrust of plaintiff's complaint: Plaintiff, after being accustomed to a "climate of hospitality," in which the OIAB "freely" granted exemptions, see Plaintiff's Motion for Summary Judgment at 8, 18, objects to the more rigorous enforcement of the standard established by the OIAB.

The Court further finds untenable plaintiff's claim that the FEA has substantially departed from precedent in that it has begun to apply different criteria to applications for refunds than it applies to applications for fee-exempt licenses. There is insufficient evidence of two substantially different standards. The use of the term retroactive relief is not evidence of a higher standard, as plaintiff claims, but is merely a

means of describing the type of relief requested. In the instant case, the FEA did not engage in two separate analyses of the requests for exemption and refund relief. After a full discussion of the fee exemption request, the Court summarily disposed of the rebate request: "[The evidence] does not constitute a showing of the type of serious, irreparable financial injury which warrants retroactive relief." 3 FEA ¶ 83,-121, at 83,448. The FEA apparently concluded, as counsel for the Government stated in open Court, that Apex, having failed to qualify for prospective relief, failed to qualify for retroactive relief. Indeed, a policy requiring an applicant to qualify for prospective relief before it could be entitled to retroactive relief comports with the regulations governing the OIAB, which authorized refunds of license fees previously paid by importers who subsequently became entitled to fee-exempt licenses. 38 Fed.Reg. 19,820 (1973). Moreover, the other FEA decisions that plaintiff cites in support of its claim do not provide any evidence that the FEA has developed two significantly different standards for requests for exemption and refund relief.[5]

Accordingly, defendants' motion for summary judgment on the first claim is granted and plaintiff's motion is denied.

## II. Equitable Estoppel.

Plaintiff claims that the FEA should be estopped from denying plaintiff relief, because plaintiff relied to its detriment on defendants' assurances that the FEA would not change the substantive criteria by which fee-exempt licenses and refunds had previously been judged by the OIAB. Specifically, as set forth earlier in this memorandum, plaintiff relies on statements made by the FEA in its Notice of Proposed Rulemaking, in the introductory comments to the regulations, and in a meeting with representatives of independent marketers.

■ The Court concludes, however, that the doctrine of equitable estoppel is not applicable to the instant case. While this doctrine may be applied against the Government in certain circumstances, see K. Davis, *Administrative Law of the Seventies* §§ 17.01, 17.03 (1976), the doctrine has not been applied in cases similar to the instant case. Courts generally have invoked estoppel against the Government where a party has relied on government statements or behavior concerning a single transaction. For example, estoppel has frequently been invoked where a party has relied to its detriment on government behavior with respect to the award of a specific government contract. See, e. g., *Emeco Indus., Inc. v. United States*, 485 F.2d 652, 202 Ct.Cl. 1006 (1973); *Manloading & Management Associates Inc. v. United States*, 461 F.2d 1299, 198 Ct.Cl. 628 (1972).

■ In the case at bar, the FEA did not make assurances concerning a specific application. The FEA merely indicated that it intended to follow the precedents of the OIAB. Thus, in essence, plaintiff is seeking to require defendants to reach a certain result on the theory that it should strictly adhere to precedent. The Court finds this argument untenable. It would be unwise, as a matter of policy, for a court to prevent an agency from deciding that the principles it has previously articulated are unsound. See K. Davis, *Administrative Law Treatise* § 17.06, at 524 (1958). Indeed, an agency can change a standard of law through adjudication, provided it has adequately explained its reasons for departure from precedent. If a court determines that the agency has both departed from established precedent and failed to explain adequately its departure, the sole remedy is to remand the case to the agency so that the agency can explain its reasons for departure from precedent. See, e. g., *Garrett v. FCC, supra; Public Service Commn. v. FPC*, 167 U.S.App.D.C. 100, 511 F.2d 338 (D.C.Cir.1975). The reviewing court is only empowered to ensure that the agency has adequately explained its course of action. See *National Citizens Comm. for Broadcast-*

---

5.  See *Kalama Chemical, Inc.*, 3 FEA ¶ 80,512 (1975) ("Kalama is a financially healthy enterprise"); *U.S. Oil Co.*, 3 FEA ¶ 83,019 (1975),

*aff'd*, 3 FEA ¶ 80,571 (1976) ("appreciably affect the firm's position").

*ing v. FCC*, No. 76–1351, 186 U.S.App.D.C. ——, at ——, 567 F.2d 1095, at 1099 (D.C.Cir. Nov. 11, 1977). Estoppel is not an appropriate remedy for an agency's explained or even unexplained departure from precedent.[6] The Court therefore grants summary judgment on the equitable estoppel issue in favor of defendants.

### III. *Due Process.*

■ Plaintiff contends that it was denied administrative due process, because some of the same officials within the Office of Exceptions and Appeals had a significant role in both Apex's original petition and appeal. Plaintiff further contends that Melvin Goldstein, Director of the Office of Exceptions and Appeals of the FEA, was the "controlling decision-maker" in both the original decision and the appeal. Even if the latter statement is true, plaintiff fails to provide authority for the proposition that its due process rights were denied. Plaintiff is not entitled, as a matter of constitutional due process, to have his original petition and appeal determined by two different officials. Moreover, the APA provides no authority, since it does not address the manner in which an appeal within the agency must occur. Thus, authority, if any, must be derived from the FEAA.

At the time that the appeal was decided, the governing statutory provision provided:

> Any officer or agency authorized to issue the rules, regulations, or orders described in paragraph (A) shall provide for the making of such adjustments, consistent with the other purposes of this chapter, as may be necessary to prevent special hardship, inequity, or unfair distribution of burdens and shall, by rule, establish

procedures which are available to any person for the purpose of seeking an interpretation, modification, recission of, exception to, or exemption from, such rules, regulations, and orders. If such person is aggrieved or adversely affected by the denial of a request for such action under the preceding sentence, he may request a review of such denial by the officer or agency and may obtain judicial review in accordance with paragraph (2) of this subsection when such denial becomes final. The officer or agency shall, by rule, establish appropriate procedures, including a hearing where deemed advisable by the officer or agency, for considering such requests for action under this paragraph.

15 U.S.C. § 766(i)(1)(D) (1974). Even assuming that the same official was the controlling decision-maker in both the original decision and the appeal, the FEA's procedure would not violate the FEAA provision then in effect. Thus, it is unnecessary to consider whether the same official in fact controlled the decision-making at both levels or whether the procedure violates Section 766(i)(1)(D), as amended. Thus, the Court concludes that defendants are entitled to summary judgment on the due process issue.

## CONCLUSION

The Court grants summary judgment in favor of the defendants on all of the claims presented. Accordingly, the entire action is dismissed with prejudice.

---

6. The Court also rejects plaintiff's suggestion that estoppel is particularly warranted in the instant case, because the agency could have changed its standard through rulemaking. *See* Plaintiff's Motion for Summary Judgment at 47. Even though it is possible for an agency to engage in rulemaking, an agency has the discretion to proceed either by rulemaking or adjudication. As the Court in *S. E. C. v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), stated, "the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primari-

ly in the informed discretion of the administrative agency." *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Even though the Court believes that an agency should announce a change in substantive standards through rulemaking, the Court may order rulemaking only if it determines that the agency's decision to proceed by adjudication is an abuse of discretion. *See NLRB v. Bell Aerospace Co., supra,* at 294, 94 S.Ct. 1757. The Court finds that the FEA did not abuse its discretion by proceeding through *ad hoc* litigation in the instant case.