**BROAD AVENUE LAUNDRY
AND TAILORING**

v.

**The UNITED STATES.**

**Appeal No. 82–81.**

United States Court of Claims.

June 16, 1982.

Charles M. Reifel, Atty. of record, Washington, D. C., for petitioner; Bastianelli, Thomas, Reifel & Lyon, Washington, D. C., of counsel.

Gerald L. Elston, Washington, D. C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D. C., for respondent; Timothy J. Greszko, Dept. of the Army, of counsel.

Before COWEN, Senior Judge, and DAVIS and NICHOLS, Judges.

NICHOLS, Judge:

This case is an appeal under the Contract Disputes Act of 1978, 41 U.S.C. § 601 and ff, seeking review of a decision of the Armed Services Board of Contract Appeals (ASBCA). *Broad Avenue Laundry & Tailoring,* ASBCA No. 25136, 81–1 BCA ¶ 14,-895 (1980). It presents important questions whether respondent can repudiate a contracting officer's written modification of a fixed price contract and refuse to bear the pecuniary consequences on the ground that the modification was outside the contracting officer's authority, because based on a mistake of law.

The contract, awarded July 2, 1979, ran a year from August 1, 1979, and required

petitioner to operate a government-owned laundry service facility at Fort Rucker, Alabama. Petitioner succeeded a different previous contractor and inherited some of the latter's work force. The contract was labor intensive to the degree that the cost of performance varied almost directly with the applicable wage rates. These were set by collective bargaining and had to equal prevailing rates in the area as determined by the Labor Department under 41 U.S.C. § 351 and ff (Service Contract Act).

Shortly after work started under the new contract at previously established labor rates, the employees shifted their union affiliation, hoping to fare better with a new bargaining representative. The new man did indeed do better, obtaining from Mr. Hancock, owner of petitioner, in a December 1979 negotiation, an agreement for new and higher wage rates, but they agreed it would not be possible to put the new rates in effect unless the government would absorb the added cost of performance. Both therefore separately consulted Mrs. Helen E. Nicholson, the contracting officer, who said, if the Department of Labor (DOL) issued a new prevailing wage determination as a result of the new agreement, she would automatically include it (require it) in the contract and that petitioner could request a price adjustment. Apparently counting on the DOL, employer and employees formally agreed December 12, 1979, to take effect February 1, 1980. She sent a copy of the proposed new pay schedules to the DOL which determined that the newly bargained rates were the prevailing rates. Mrs. Nicholson incorporated the new prevailing rate into a modification of the contract (Mod. 12) which required petitioner to pay the new prevailing rates and for the life of the contract he did so. Petitioner then, on March 10, 1980, requested a contract price adjustment.

Neither party now contends that Mrs. Nicholson correctly applied the applicable law, as stated and construed in the DOL Regulation. It says, 29 C.F.R. § 4.143 and ff, 4.161, that wages effective at the start of an ongoing contract may be changed by "[a] change in the Fair Labor Standards Act minimum by operation of law * * *." She (not being an attorney) supposed that a new DOL prevailing wage determination effected a change "by operation of law." If she had read further, she would have come across further language which makes it reasonably clear (to a lawyer) that a mere local prevailing wage determination, not based on new statute or regulation, does not force any change in wage rates under contracts actually in effect. "Such wage determinations are effective for contracts not yet awarded * * *."

On March 19, a price analyst questioned Mrs. Nicholson's wage rate modification and recommended that legal advice be sought. Thereafter occurred a painful correspondence between her and the office of the Staff Judge Advocate (SJA) in which a clearcut legal opinion was repeatedly withheld because the contracting officer failed to furnish an adequate file with her request for a ruling. Despite the apparent simplicity of the question, to a lawyer, she obtained a definite legal statement only on June 5. The issue was still not treated as settled within the command. Only on July 16, 1980, two weeks before expiration of the contract, did Mrs. Nicholson's successor, Mrs. Gloria G. Wheeler, issue a final ruling that the price adjustment was disallowed, though petitioner seems to have been made aware at an earlier date that it was in jeopardy. The contract of course included the usual disputes clause which required the contractor "to proceed diligently with performance of this contract, pending resolution of any request for relief * * * claim, appeal, or action * * *."

The contractor took a timely appeal to the ASBCA. The board relied in denying the claim mainly on the historic doctrine of *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), that the government is not estopped by promise or undertaking of its officials outside the scope of their authority. So does respondent before us. We conclude that the act of Mrs. Nicholson, though erroneous, was within the scope of her authority. The government can be estopped by the prom-

ises of an official within the scope of her authority, as the ASBCA concedes, referring to *George H. Whike Construction Co. v. United States*, 135 Ct.Cl. 126, 140 F.Supp. 560 (1956). To the same effect *see California-Pacific Utilities Co. v. United States*, 194 Ct.Cl. 703, 720 (1971); *Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977), or by a contracting officer's waiver, *Roberts v. United States*, 174 Ct.Cl. 940, 357 F.2d 938 (1966) (to a price reduction for reduced cost under changes article).

The question clearly is not the general rule but its application to the facts of this case. The parties have discussed, and we take up, the following three lines of legal doctrine: I, how the no estoppel rule applies to an official's undertaking based on a mistake of law, but otherwise within her jurisdiction, II, whether the error here was "palpably illegal" it being respondent's premise that a "palpably illegal" commitment cannot be the basis of an estoppel or other equitable claim by the other party, and III, whether respondent by its acts and omissions breached its implied commitment to cooperate and act in good faith. We take these up in order, but our conclusions on the first two issues are dispositive.

## I

The recent Supreme Court case of *Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981) shows that the doctrine the government is not estopped by the unauthorized commitments of its agents is still alive and well. The facts, however, in that case reflect that the claimant sought to establish entitlement to Social Security benefits for which she had filed no written application, as the law affirmatively required her to do. The government agent's blundering statements were thought below to excuse this requirement, the substantive prerequisites to entitlement all being present. The Court in summarily reversing reiterated, however, at p. 788, 101 S.Ct. at p. 1471, its previous recognition in the *Federal Crop Ins.* case of "the duty of all courts to observe the conditions defined by Congress for charging the public treasury." Since Congress affirmatively required, on top of everything else, a written application, the blundering official could not excuse this requirement by means of his blunders.

The effort to use an official's errors to avoid compliance with an affirmative prerequisite to an entitlement, is a sure loser. A classic case in this court is *Montilla v. United States*, 198 Ct.Cl. 48, 457 F.2d 978 (1972), where the reservist claimant sought to use the alleged erroneous statement of an Army officer to obtain entitlement to military retirement pay without earning "points" by training duty as the law requires. The noteworthy thing about *Schweiker v. Hansen*, is that except in that classic situation, it seems to recognize at least by reference to lower court decisions, that in cases other than this classic situation, estoppel by an agent's blunders is not impossible. A seventh circuit decision since *Schweiker v. Hansen*, takes this view. *Portmann v. United States*, 674 F.2d 1155 (1982). The claim of estoppel was against the U. S. Postal Service by the owner of a package lost in the mail. The blunder by the postal clerk was to assure the mailer that insurance offered by the Service included "document reconstruction" though in fact by regulation it did not. The court upheld the estoppel on consideration of all the factors. The fact the government had gone into the market place as vendor, and that the right claimed was contractual and not merely to an entitlement, were seen as distinguishing factors that justified an estoppel despite *Schweiker v. Hansen*.

Central to the ASBCA's and to respondent's argument here is the thesis, not clearly spelled out but necessarily implied, that any order or commitment by a contracting officer based on an incorrect idea of the law is necessarily unauthorized. But this cannot be true, and a moment's thought will show its fallacy. Payment of prevailing wages is one of the services required of petitioner by the contract. Performance of laundry service is another.

Suppose the contracting officer decided to order some particular laundry service in a mistaken belief that the contract called for it. The order, if made with requisite formality, would be valid and effective even though based on a mistake of law. The contractor would under the disputes clause language already quoted be required to comply, perform the demanded service, and prosecute a claim for a constructive change order under disputes clause procedure. Even though under that procedure the contractor might establish that the demand was based on a mistake of law, this would not prove that it was unauthorized. It was valid and effective to impose on the contractor a legal duty to obey the order, and on the government to pay for the services if the interpretation were held erroneous. If he refused to obey, he would be in default. The government, which clothes its contracting officers with authority to effectuate these consequences on the basis of a mistake of law, cannot now turn around and take the wholly inconsistent position that it did not authorize the contracting officer to make legal mistakes.

Of course, this cannot be carried too far. The orders must be within the officer's subject matter jurisdiction. This under the Service Contract Act includes employee wages. The order must not be contrary to any express authority limitation. The government could give the contracting officer a writing, saying she is not authorized to make mistakes of law, but only correct rulings. No such document is cited here. The order must not call on the contractor to do something illegal. We assume there is nothing in the Service Contract Act making it illegal to pay above the prevailing wage. If the contracting officer, *e.g.*, ordered the contractor to discriminate among races in hiring employees for the job, the government could properly say the order was unauthorized. The order must be an order. The government would have a far stronger case to deny estoppel if the contracting officer merely opined orally that the Service Contract Act made the prevailing wage determination applicable to contracts previously awarded. The government did not employ the contracting officer to tender gratuitous legal advice to contractors. *Cf. Mills v. United States*, 187 Ct.Cl. 696, 410 F.2d 1255 (1969). We conclude that within the foregoing limitations, a contracting officer in Mrs. Nicholson's situation has actual authority to embody mistakes of law in her decisions and the government is estopped, having endowed her with the powers it has, to assert otherwise.

II

■ The petitioner cites a line of cases to establish that a contracting officer's decisions are not void merely because erroneous. These cases hold that a contract award is valid to endow a contractor with the right to a convenience termination, even though legally erroneous, because someone else was entitled to receive the award, if the illegality is not plain and palpable. *John Reiner & Co. v. United States*, 163 Ct.Cl. 381, 325 F.2d 438 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964); *Warren Brothers Roads Co. v. United States*, 173 Ct.Cl. 714, 355 F.2d 612 (1965); and note also *Manloading & Management Associates, Inc. v. United States*, 198 Ct.Cl. 628, 461 F.2d 1299 (1972). The latter case involved statements at a prebid conference on a contract awarded in a year near its end, in which oral statements were made that the contract as awarded would be renewed for a later year. The court applied an equitable estoppel, noting that the government was acting in a "proprietary capacity," and that the representations did not nullify a "statutory requirement." 198 Ct.Cl. at 635, 461 F.2d at 1302–03.

Respondent naturally responds, yes, but the modification was palpably illegal here. We have some doubt whether the palpable illegality of a contract modification would make the modification void, as in that event the requirement of the disputes article would be nullified and the contractor would not be required to continue performance, pending resolution of the dispute by appeal procedure under the contract. It may be doubted, therefore, whether a contractor

must scrutinize an order for palpable illegality, refuse to perform if it sees palpable illegality, and perform subject to resolution of the dispute on appeal only if the illegality, in its eyes, is not palpable.

If there can be a palpable illegality mandating refusal to comply with a contracting officer's directives, we do not think it present here. In the first place, Mod. 12 did not, by any view of the law, require petitioner to do anything illegal. In the second place, the regulation involved does indeed, as respondent says, read perfectly plainly to a lawyer. Counsel for both sides and we ourselves all read it the same way. But it was not perfectly clear to the contracting officer, Mrs. Nicholson, a lay person. Similarly in *Portmann v. United States, supra,* the meaning of the postal regulation as denying the insurance claimed was clear to the court, yet it was deemed significant that a lay person could easily misconstrue it. The horrid suspicion emerges that the regulation in our case is one of many put out by the government that is, to nonlawyers, completely opaque. In determining whether an illegality is palpable it must surely be reasonable to notice the attainments of the contractor. Palpable to whom? Petitioner is a small business, certified as such for award of small business set-asides. Apparently the named petitioner here is the name under which Mr. Hancock does business. Unlike General Motors, he had no lawyer at his elbow in the contract award and performance period. He appeared pro se before the ASBCA. He said it would take a "battery of lawyers" to interpret the regulation correctly. That body took note of his lack of legal skills, and in its best tradition, endeavored to protect him. We think it is with small dignity indeed that respondent argues that an illegality should be perceivable to Mr. Hancock that was not perceivable to its own contracting officer, a lay person also, but with 7 years of experience and ostensible full access to legal services, as to the reality of which, however, see our fact statement. The board, with its experience in these matters, did not question Mrs. Nicholson's competence or good faith. It was not surprised at her error. Mr. Hancock didn't know, frankly. If he had read the regulation he still would not have known. He asked and got his answer, which respondent says he should have known was wrong.

## III

What we have said should be, and is, sufficient to dispose of the case. Petitioner's final point is respondent's implied warranty that it will do nothing to hinder or obstruct performance by the other party, or make it more costly. *Roberts v. United States, supra.* This includes the obligation to supply information in respondent's possession that the contractor needs to have to perform speedily and economically. Examples are: *Helene Curtis Industries, Inc. v. United States,* 160 Ct.Cl. 437, 312 F.2d 774 (1963) (information that plaintiff needed on machinery to perform with success); *J. A. Jones Construction Co. v. United States,* 182 Ct.Cl. 615, 390 F.2d 886 (1968) (information as to government plans for crash construction which would enhance labor costs "an essential element of the cause of action is defendant's knowledge of the plaintiff's ignorance." 182 Ct.Cl. at 623, 390 F.2d at 890–91); *Maxwell Dynamometer Co. v. United States,* 181 Ct.Cl. 607, 386 F.2d 855 (1967) (information that plaintiff was testing dynamometers in an unnecessarily expensive and impossible way); *Hardeman-Monier Hutcherson v. United States,* 198 Ct.Cl. 472, 458 F.2d 1364 (1972) (adverse sea and weather conditions at work site); *Chris Berg, Inc. v. United States,* 186 Ct.Cl. 389, 404 F.2d 364 (1968) (Typhoon conditions, Marcus Island).

The obstruction and hindrance by respondent present in this case resulted from the contracting officer's undertaking in December 1979, to decide a legal question, though she was a lay person, from her issuance of the erroneous and improper Mod. 12, and from her long delay in resolving the question of legality when raised. The findings do not reflect that the DOL expected that the new prevailing rates would apply to any ongoing already awarded contract, but as Mrs. Nicholson testified, unless they did,

why did they bother to issue a prevailing rate that applied to no other body of workers? There was in point of fact a previous small change in the rates that was erroneously applied to the ongoing contract without controversy, and a price adjustment awarded. This established a precedent which may well have contributed to the larger error that is the subject of this lawsuit. Some little egg belongs on the DOL chin. Once the issue of legality was raised, March 9, the inexcusable delays in getting a legal ruling speak for themselves, and all to the great financial detriment of a small contractor, or would be but for our conclusions in Parts I and II.

It is unnecessary to do more than mention the possible application of the warranty rule to this case. It would add some support to our conclusions in Parts I and II. We do not pass on it because it is a prop we do not need.

The ASBCA's denial of entitlement is therefore reversed, and the cause is remanded to the board for determination of quantum.