**BROAD AVENUE LAUNDRY AND TAILORING, Petitioner,**

v.

**The UNITED STATES, Respondent.**

No. 28–81.

United States Court of Appeals, Federal Circuit.

Nov. 29, 1982.

Charles M. Reifel, Washington, D.C., argued for petitioner. Dempsey & Bastianelli, Washington, D.C., was on the brief.

Gerald L. Elston, Washington, D.C., argued for respondent. With him on the brief were Asst. Atty. Gen. J. Paul McGrath, and Timothy J. Greszko, Dept. of the Army, Washington, D.C.

Before FRIEDMAN, RICH, BENNETT, MILLER and SMITH, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an application under the Equal Access to Justice Act, 28 U.S.C. § 2412

(Supp.IV 1980) (the Act), for attorney's fees and expenses incurred in the petitioner's successful appeal to the United States Court of Claims from a decision of the Armed Services Board of Contract Appeals (the Board), denying an upward price adjustment in a government contract. We deny the application for attorney's fees and expenses.

## I.

The dispute that gave rise to the present application grew out of a fixed price contract under which the applicant agreed to operate for one year a government-owned laundry at a military post. Labor costs were such a major item of the contract that the petitioner's cost of performance varied almost directly with the wages paid. The wage rates were set through collective bargaining and were required to equal the prevailing wage rates in the area determined by the Department of Labor under 41 U.S.C. §§ 351–358 (1976). When the petitioner took over the operation of the laundry, there was an existing collective bargaining agreement.

Shortly after the petitioner began to perform the contract, its employees shifted their union affiliation. Following collective bargaining between the petitioner and the new union, the parties agreed upon higher wages. They further agreed that those higher wages would not be effected unless the government agreed to incorporate them in the contract as an additional cost of performance.

The parties consulted the contracting officer, who said that if the Labor Department would issue a new prevailing wage determination reflecting the higher wages, she would incorporate them in the contract and that the petitioner then could request a contract price adjustment. She acted in reliance upon a Department of Labor regulation, 29 C.F.R. §§ 4.143–4.145, 4.161, which provided that the wage rates in a contract could be changed by "[a] change in the Fair Labor Standards Act minimum by

operation of law." 29 C.F.R. at § 4.161. The contracting officer, who was not a lawyer, assumed that a new Labor Department prevailing wage determination would constitute a change "by operation of law." She was unaware of another provision of the regulation that indicated that new prevailing wage determinations would be effective only for contracts not yet awarded, but not for contracts already in effect. *Id.*

The Labor Department issued a new prevailing wage determination embodying the higher wages. The contracting officer incorporated those higher wages into a modification of the contract that required the petitioner to pay the higher rate for the life of the contract. The petitioner then requested a contract price adjustment to reflect the higher wages.

Extensive discussion ensued within the government regarding the legality of the contracting officer's modification of the contract to require the higher wages. Two weeks before the expiration of the contract, a successor contracting officer disallowed the price adjustment.

The petitioner, appearing pro se, appealed to the Board, which held that the petitioner was not entitled to a price adjustment. The Board ruled that the contracting officer had no "authority to bind the Government either in promising to amend the contract if a wage revision" were issued or "in incorporating [the] Revision 10 into the contract. The contracting officer had the apparent authority to take these actions but no actual authority." The Board held that the petitioner could not invoke equitable estoppel against the government, which was the theory upon which its case primarily was based, because for that doctrine to apply "the Government representative whose acts form the basis for the estoppel must have been acting within the scope of his/her authority."

The petitioner (represented by counsel) filed an appeal from the Board to the Court of Claims. The court reversed the Board's determination that the petitioner was not

entitled to recover and remanded the case to the Board to determine damages. *Broad Avenue Laundry and Tailoring v. United States*, 681 F.2d 746 (Ct.Cl.1982). The court held that the act of the contracting officer "though erroneous, was within the scope of her authority." *Id.* at 747. It ruled that the contracting officer had "actual authority to embody mistakes of law in her decisions and the government is estopped, having endowed her with the powers it has, to assert otherwise." *Id.* at 749.

## II.

The provisions of the Equal Access to Justice Act involved in this case authorize a court to "award reasonable fees and expenses of attorneys ... to the prevailing party in any civil action brought by or against the United States ... in any court having jurisdiction of such action." 28 U.S.C. § 2412(b) (Supp.IV 1980). The Act further provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified." *Id.* § 2412(d)(1)(A).

In this case we need decide only two questions: (1) whether "the position of the United States," the justification for which must be evaluated, is the position it took in the court litigation for which the fees and expenses are sought, or also includes the position it took before the tribunal below (here the Board); and (2) whether the position of the United States in this case was substantially justified. We hold that the position of the United States refers to the government's position in court and not before the Board, and that the government's position here was substantially justified.

■ A. The Act provides for the awarding against the United States of attorney's fees "incurred by [the prevailing] party in any civil action ... in any court having

jurisdiction of that action, unless the court finds that the position of the United States was substantially justified." A fair and reasonable reading of those words is that the position referred to is that taken by the United States in the "civil action" in which the attorney's fees were "incurred." The provision addresses the award of attorney's fees in a civil action in court, and it is in that particular action in which the government takes a position. *See Operating Engineers Local Union No. 3 v. Bohn*, 541 F.Supp. 486, 493–96 (D.Utah 1982); *Alspach v. District Director of Internal Revenue*, 527 F.Supp. 225, 228–29 (D.Md.1981). *Contra Citizens for Block Grant Compliance v. City of Euclid*, 537 F.Supp. 422, 426 (D.Ohio 1982); *Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348, 352 (D.D.C.1982).

■ It would strain the normal meaning of language to construe the statutory words to cover the position the United States took in the administrative proceedings that led to the civil action in which the attorney's fees were incurred. The petitioner here seeks attorney's fees and expenses only for services rendered in the proceedings before the Court of Claims, and it would be inappropriate to look at the position the United States took in other forums to determine whether to award fees for those services.

The legislative history of the Act sheds no light on the issue of just which "position" is to be evaluated. The ordinary meaning of the words Congress used, however, limits our review to the justification for the position of the United States in the proceedings before the Court of Claims. If Congress had intended the words to mean something else, presumably it would have so indicated.

Another provision of the Act—28 U.S.C. § 2412(d)(3)—supports this conclusion. That section provides that in awarding fees to a prevailing party in an action for judicial review in an adversary adjudication as defined in 5 U.S.C. § 504 (Supp.IV 1980), or an adversary adjudication subject to the

Contract Disputes Act of 1978 (as this case was), the court shall include in that award fees and expenses unless it finds that "during such adversary adjudication the position of the United States was substantially justified." (This section does not cover this case because it applies only if the court awards fees, which we do not do here.)

In section 2412(d)(3) Congress specifically dealt with the situation where the position of the United States in the administrative proceedings was not substantially justified. This explicit reference to the position of the United States in those proceedings is in sharp contrast to the language involved in this case, which provides for an award of attorney's fees on the basis of the position of the United States "in any civil action . . . brought by or against the United States in any court." Section 2412(d)(3) shows that when Congress intended the court to consider the position of the United States before the agency, it knew precisely how so to provide. The failure of Congress to include similar language in section 2412(d)(1)(A) is strong evidence that it did not intend the latter section also to cover the position of the United States before the agency.

■ In holding that the position to which the Act refers is the position the United States took in the court litigation, we do not suggest that the validity of the agency decision should be ignored. The justification for the government's litigating position necessarily implicates the decision of the tribunal being reviewed. The merits of the latter decision, however, are implicated only as one element of evaluating the justification for the government's judicial litigating position. In considering an application for attorney's fees under the Equal Access to Justice Act, the court is not to re-examine the administrative proceedings in an attempt to determine whether the party seeking the attorney's fees should have prevailed before that tribunal.

B. 1. The legislative history sheds some light upon the meaning of the words "substantially justified." The committee reports stated:

> The test of whether or not a Government action is substantially justified is essentially one of reasonableness. Where the Government can show that its case had a reasonable basis both in law and fact, no award will be made.

S.Rep. No. 253, 96th Cong., 2d Sess. 6 (1980); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4984, 4989.

■ Whether the position the United States took in the litigation was substantially justified because it was reasonable depends upon all the pertinent facts of the case. Fixed rules cannot be established for determining this issue. Similarly, there is no occasion or need to attempt to describe the particular facts that might be relevant in a particular case or to indicate the respective weight to be given to them. Since two cases in litigation are rarely alike, the decision whether the position of the United States in a particular case was substantially justified is unlikely to be a significant precedent in determining that issue in another case.

■ There are two guidelines, however, that properly may be stated:

a. The mere fact that the United States lost the case does not show that its position in defending the case was not substantially justified. The committee reports make this clear. They explain that the standard of reasonableness "should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case." S.Rep. No. 253, *supra* at 7; H.R.Rep. No. 1418, *supra* at 11, 1980 U.S.Code Cong. & Ad.News at 4990. Indeed, the committee reports show that Congress did not intend the "substantially justified" standard to "require the Government to establish that its decision to litigate was based on a substantial probability of prevailing." *Id.* Making the outcome of the case determinative would virtually elim-

inate the "substantially justified" standard from the statute.

b. A corollary of this principle is that the position of the United States is not shown to have been substantially justified merely because the government prevailed before the tribunal below and endeavored to uphold the decision in its favor. If that were the rule, attorney's fees never could be awarded in favor of an appellant against the government.

2. We find that the position of the United States before the Court of Claims in defending the decision of the Board in this case was substantially justified.

In holding that under the pertinent regulation the contracting officer had no authority to increase the contract price on the basis of a prevailing wage determination made after the contract was executed, the Board followed its prior decision in *Suburban Industrial Maintenance Co.,* ASBCA No. 22875, 79–1 BCA ¶ 13731. The Court of Claims had not decided the issue. In holding against the petitioner, the Board applied the well-settled principle that the government is not bound by the unauthorized act of its agent.

██ Although equitable estoppel may provide an exception to that principle, the precise scope and contours of the exception are unclear and are subject to varying judicial interpretations. On the basis of the law as it stood after the Board decision, it was far from clear that the Board's decision was erroneous or that the Court of Claims would reverse it. In those circumstances, it was reasonable for the United States to defend the Board's decision before the Court of Claims.

In reversing the Board, the Court of Claims held that although the contracting officer's action was erroneous, it was within her authority because she had "actual authority to embody mistakes of law in her decisions and the government is estopped, having endowed her with the powers it has, to assert otherwise." Perhaps that conclusion was novel, but in any event it cannot be described as foreordained on the basis of the decisions reported and regulations in force at the time the government litigated the case before the Court of Claims. *Cf. Donovan v. Dillingham,* 668 F.2d 1196, 1199 (11th Cir.1982).

Considering all the circumstances, the position the United States took before the Court of Claims in defending the decision of the Board was substantially justified. It follows that the petitioner is not entitled to be awarded fees and expenses against the United States under the Equal Access to Justice Act. The application for fees and expenses is *denied.*