**INTERNATIONAL BUSINESS INVESTMENTS, INC.,**
**Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. 543–87C.**

United States Claims Court.

March 16, 1990.

---

Donald E. Barnhill, San Antonio, Tex., for plaintiff.

Paula J. Barton, with whom John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Peterson, Asst. Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

SMITH, Chief Judge.

This case, which is before the court on cross-motions for summary judgment, involves the application of prompt payment discounts to contracts between the government and a private contractor. The issues presented are: (i) whether the contractor is entitled to recover all prompt payment discounts taken during the course of the contract, where the contractor believed that the amount of the discount was too high at the time it was taken; and (ii) whether the government's exercise of contractual options to extend the contract entitles the contractor to interest on the overdiscounted amounts under the Prompt Payment Act, 31 U.S.C. §§ 3901–3906 (1982) (PPA), as well as under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1982) (CDA), where the original contract was executed prior to the effective date of the PPA, but the options were exercised after such date. For the reasons given below, the court grants partial summary judgment for defendant and partial summary judgment for plaintiff.

## FACTS

Contract no. N62467–81–C–2765 was awarded to International Business Investments, Inc. (IBI), by the United States Navy, on September 28, 1981. The contract required IBI to provide security guard services at the Naval Air Station located in Key West, Florida. While the contract provided for an initial term of one year, it also gave the Navy the right to exercise two one-year options to renew. Both option years were taken by the Navy, and further modifications to the contract extended it for a fourth year. The contract completion date was September 30, 1985.

IBI's proposal included a two-percent discount for prompt payment within twenty calendar days after the Navy's receipt of a

proper invoice. IBI's bid was second-lowest on its face, but the Navy deemed IBI's bid to be lowest because of anticipated application of the two-percent prompt payment discount. During the first year of the contract the government took all prompt payment discounts properly due it.

Beginning with the first option year, which started on October 1, 1982, various contract modifications incorporated statutorily mandated wage increases into the contract.[1] These modifications increased each invoice by the amount of the increased wages. The prompt payment discount taken by the government also increased by two percent of the increased wages. The contract did not contain terms covering the application of the prompt payment discount to the portion of the contract price increased to reflect revised wage determinations.

IBI avers in an affidavit in support of its cross-motion for summary judgment, that it told Navy officials in 1982 that the amount of the discount attributed to the increased wage was wrongfully taken. Defendant counters in an affidavit of the contracting officer (CO) that no such conversations took place. The first written indication of a dispute did not occur until October 17, 1985, at the expiration of the contract, in a letter from plaintiff to the CO.

On December 22, 1986, plaintiff filed a claim with the CO. In that claim, plaintiff sought to recover all prompt payment discounts taken, as well as interest under the PPA. The CO, relying upon *Jets Services Inc.*, ASBCA No. 19070, 74–2 BCA ¶ 10,649 (1974), agreed that the amount of the discount related to the wage increases—

$3,603.68—was wrongfully taken.[2] The CO also awarded interest under the CDA, running from the time the claim was filed with the CO until his decision was rendered. However, the CO declined to award interest under the PPA, concluding that the exercise of options to extend the contract made after the October 1, 1982 effective date of the PPA did not create a new contract covered by the PPA, but merely served to renew the original one. In addition, the CO declined to pay plaintiff the full amount of all prompt payment discounts taken—approximately $42,000—finding that the Navy had taken its discount in good faith and without knowledge of impropriety. This appeal followed.

## DISCUSSION

### I. Prompt payment discounts.

The first issue for the court to resolve is whether IBI is entitled to recover all prompt payment discounts taken by the Navy, as a matter of law.

Summary judgment is appropriate where the pleadings, affidavits, and other papers before the court show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. RUSCC 56(c). The burden is on the opponent of the motion to come forth with a showing of genuinely disputed material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560 (Fed.Cir.1987). However, the party opposing summary judgment must show an evidentiary conflict on the record; mere denials or conclu-

---

1. The contract provided that the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1982), and Service Contract Act, 41 U.S.C. § 351 et seq. (1982), price adjustment provisions would apply to options to renew.

2. The Armed Services Board in the *Jets Services Inc.* decision interpreted paragraph (a) of the price adjustment clause of the Service Contract Act, 41 U.S.C. § 351 (1982), to prohibit including mandatory revised labor costs in the calculation of a prompt payment discount:

   In our view the *quid pro quo* for the warranty made by the appellant under paragraph (a) was a guarantee that appellant would recover its direct cost increases flowing from a revised wage determination. It is clear that if the Government were permitted to take the prompt payment discount on the basis of a contract price so increased, appellant would not recover the full amount of its increased direct costs. Such a result would be inconsistent with the intent of the Price Adjustment clause and would further penalize appellant for circumstances which it is not entitled to take into account when it prepared its proposal.

   ASBCA No. 19070, 74–2 BCA ¶ 10,649 at 50, 58 (1974).

sory statements are not sufficient to defeat a summary judgment motion. *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir.1984).

■ Defendant's central argument for summary judgment is that the CO has already granted the full relief to which plaintiff is entitled by law under the facts of the case. IBI, on the other hand, argues for summary judgment because the Navy's overapplication of the discount rate transformed the full payments into partial payments, and therefore since full payment was not timely made, the Navy was not entitled to prompt payment discounts at all.

The court initially notes that the facts are minimally disputed. The main issue presented is whether plaintiff is entitled as a matter of law to payment of all prompt payment discounts taken by the Navy during the course of the option years of this contract. These years cover the three year period from October 1, 1982 to September 30, 1985. During this period, the Navy took prompt payment discounts on all invoices presented to it. In doing so, however, the Navy erred in applying the discount to that portion of the invoices representing increased wages. Plaintiff argues that this mistake recasts full payments into partial payments, entitling it to recover all of the discounts taken.

Plaintiff's argument relies heavily upon *ISS Energy Services, Inc.*, GSBCA No. 7679, 85–3 BCA ¶ 18,178 (1985), *Dan's Janitorial Service, Inc.*, ASBCA No. 29486, 86–3 BCA ¶ 19,238 (1986), and *Commercial Systems, Inc.*, B–213466, 84–1 CPD ¶ 532 (1984). In *ISS Energy Services*, the General Services Board of Contract Appeals held that partial payment of an undisputed invoice within the discount period does not entitle the government to the prompt payment discount. However, as the government argues, *ISS Energy Services* is distinguishable from the present case. In *ISS Energy Services*, the government intentionally made partial payments of an undisputed invoice, whereas in the instant case the Navy paid the entire amount of the invoice, minus the two percent prompt pay-

ment discount. The government did not intend to make a partial payment, and in fact made a complete payment according to its calculations of the discount. Indeed, the government entered performance on the contract with full intent to make complete, timely payments, otherwise the lower bid without the allowance for timely payments would have been accepted.

Both *Dan's Janitorial Service* and *Commercial Systems* involved late payments. In *Dan's Janitorial Service*, the government took the discount for payment within 15 days but mailed the check to the wrong address. Therefore, payment was not timely and the discount not warranted. In *Commercial Systems*, computer hardware malfunctioned and the otherwise timely payment was delayed beyond the discount period. The Comptroller General held that a delay beyond the discount period caused by the government's negligence forfeited the government's right to take a prompt payment discount. In contrast to the situations presented in *Dan's Janitorial Service* and *Commercial Systems*, the Navy made timely payment of the full amount of each IBI invoice, minus the two-percent discount. The Navy intended full and timely payment, and took the discounts in good faith.

■ IBI also relies upon *Broad Avenue Laundry & Tailoring v. United States*, 231 Ct.Cl. 1, 681 F.2d 746 (1982), for the proposition that the government is estopped from claiming that the payments were full payments instead of partial payments, since IBI allegedly put the Navy on notice of the impropriety of the discounting practice during the negotiation process for the first option year in 1982. Such an argument misconstrues and expands the *Broad Avenue Laundry* holding. In that case, the contracting officer had revised upward the contract price after the contractor's union had demanded a wage increase, mistakenly assuming "that a mere local prevailing wage determination, not based on new statute or regulation ... [forced a] change in wage rates under contracts actually in effect." 231 Ct.Cl. at 3, 681 F.2d 746. The court held that the

government was estopped from repudiating the contracting officer's mistaken modification of the contract, where such modification was within the contracting officer's authority and not illegal.

Plaintiff's argument for the application of estoppel to the present case goes beyond the *Broad Avenue Laundry* holding. The foundation for equitable estoppel is that "no one shall be permitted to found any claim upon his own inequity or to take advantage of his own wrong." *R.H. Stearns Co. v. United States,* 291 U.S. 54, 62, 54 S.Ct. 325, 78 L.Ed. 647 (1934). Pomeroy has defined equitable estoppel as precluding a party "from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." 3 Pomeroy § 804, at 189 (5th ed. 1941).

Plaintiff's argument for the application of equitable estoppel is erroneous, since the government's present position is the same one it held at the time of payment, namely, that full and timely payment was made, thereby entitling the government to a discount. Plaintiff makes the circular argument that its alleged communication to Navy officials in 1982 estops the government from claiming that it made payments-in-full because the Navy knew the payments were actually partial. However, there is nothing in the record to indicate that the contracting officer knew of the impropriety of the discount prior to the expiration of the contract.

Even assuming that plaintiff had informed the Navy of the impropriety of its discounting practice back in 1982, estoppel cannot be applied where the error can be corrected at any time. In *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), the Supreme Court refused to apply estoppel to allow the respondent to recover retroactive social security benefits. In that case, a government agent had failed to inform the respondent that the filing of a written application was a prerequisite to being considered for bene-

fits. The Supreme Court found that the respondent could have filed for benefits as soon he learned that an application was necessary, thus, there was no cutoff date that would give rise to a need for judicial intercession. In the present case, IBI has not shown why it did not assert its complaint over the discount computation in some written form until after the expiration of the contract. For this reason alone, estoppel should not apply to this case.

Additionally, this court is reluctant to apply estoppel against the government absent a showing by IBI that a serious injustice would result if estoppel were not applied. *See Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515 (9th Cir.1988); *Cavin v. United States,* 19 Cl.Ct. 190 (1989); *Donovan v. Master Printers' Association,* 532 F.Supp. 1140 (N.D.Ill.1981), *aff'd.,* 699 F.2d 370 (7th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984). IBI has made no such showing. Invoking estoppel here and allowing IBI to recover the full amount of the discounts taken would give IBI a windfall of over $39,000. The Navy's overdiscounting appears to have been due to an honest misinterpretation of the contract and applicable law, rather than an intent to partially pay an invoice while accepting the benefits of a prompt payment discount.

The court concludes that a good faith overapplication of a discount does not, by itself, transform an accepted full payment into a partial payment. A partial payment is only made when a partial payment is intended, or when some circumstance or negligent act results in actual partial payment not due to a dispute over the amount of the invoice. Of course, payments made outside of the discount period are not subject to the discount. However, when the government pays, within the discount period, the total amount of any invoice less any discount, it is presumably intending to pay the full invoice unless there is evidence to the contrary. Here there is none.

## II. Interest on the overdiscounted amount.

█ The second issue to be resolved is whether plaintiff is entitled to recover in-

terest under both the PPA and the CDA on the overdiscounted amount. Plaintiff argues that the government's acceptance of the options to extend the contract on or after the PPA's October 1, 1982 effective date entitles it to recover under the act.

In determining the merit of plaintiff's argument, one must keep in mind the purpose behind the PPA: to "provide incentives for the Government to pay its bills on time and thus eliminate for business concerns the need to borrow operating capital." *Steven E. Jawitz,* ASBCA No. 31173, 86-1 BCA ¶ 18,564 (1985). To provide incentives for agencies to promptly pay their bills, the PPA requires that interest penalties be charged against late payments.[3] The PPA specifically covers prompt payment discounts:

> The head of an agency offered a discount by a business concern from an amount due under a contract for property or services in exchange for payment within a specified time may pay the discounted amount only if payment is made within the specified time. The head of the agency shall pay an interest penalty on an amount remaining unpaid in violation of this section. The penalty accrues as provided under sections 3902 and 3903 of this title, except that the required payment date for the unpaid amount is the last day specified in the contract that the discounted amount may be paid.

31 U.S.C. § 3904.

The Office of Management and Budget (OMB), pursuant to congressional authorization, 31 U.S.C. § 3903, sets the PPA's interest penalty schedule. The OMB has determined that the PPA only applies to contracts entered into on or after October 1, 1982. OMB Cir. A-25, 47 Fed.Reg. 37, 321; 31 U.S.C. §§ 3901-3906.

Furthermore, most Armed Services Board of Contract Appeals precedent on this issue holds the PPA would not apply to contracts entered into before its effective date. *See, e.g., Carlin Company, Inc.,*

ASBCA No. 35362, 88-1 BCA ¶ 20,496 (1988); *Ciezko Construction Co.,* ASBCA No. 34199, 88-1 BCA ¶ 20,223 (1987), *aff'd. on recon.,* 88-2 BCA ¶ 20,653 (1988); *Consolidated Technologies, Inc.,* ASBCA No. 33560, 88-1 BCA ¶ 20,470 (1987); *Praxis Assurance Joint Venture,* ASBCA No. 27189, 83-1 BCA ¶ 16,250 (1983).

The issue before this court, however, is whether the exercise of options to extend a contract on or after the PPA effective date, brings the contract under the PPA's coverage. The government argues that the exercise of an option merely extends a contract but does not create a new one, relying upon *Varian Associates, Inc.,* B-208281, 83-1 CPD ¶ 160 (1983), as support. In *Varian Associates,* however, the Comptroller General determined that a contracting officer's private bargaining with a contractor over the price of an option term, instead of allowing rival bids, violated the fixed unilateral character of an option. Defendant incorrectly interprets this case to stand for the proposition that the exercise of an option to extend a contract is not a new contract.

Most commentators view an option as an unaccepted offer which becomes a binding contract once the option is accepted. Professor Corbin states that an option is not a contract "until accepted by the optionee, for until that time it is only a continuing offer to sell and convey at the price and upon the conditions therein specified." 1A Corbin on Contracts § 264, at 507, n. 44 (1963). As the Comptroller General stated in *Varian Associates:* "an option is an unaccepted offer to sell upon agreed terms which may be unilaterally accepted by the Government." 83-1 CPD ¶ 160 at 4. As a result, when the Navy exercised its option to extend IBI's contract, the Navy and IBI concluded a new, binding contract. In other words, the original contract entitled the government to exercise an option to extend the contract and thereby "consummate a second contract." Since the exercise of the option created a binding contract after the

---

**3.** Plaintiff can file for interest relief under both the CDA and the PPA. However, the interest penalty under the PPA does not continue to accrue "(a) after a claim for a penalty is filed

under the Contract Disputes Act of 1978 (41 U.S.C. §§ 601 et seq.) (1982); or (b) for more than one year." 31 U.S.C. § 3906.

effective date of the PPA, the Navy thereby incurred interest liability under the PPA for the overdiscounted amount.

The Armed Services Board of Contract Appeals has also held that a second contract is created by the government's exercise of an option to renew, thus allowing plaintiff to recover interest under both the PPA and the CDA. *See Honeywell Federal Systems, Inc.*, ASBCA No. 36227, 89–1 BCA ¶ 21,258 (1988). In that case, the plaintiff sought PPA interest on late payments made after the effective date of the PPA, where the original contract had been entered into before October 1, 1982. The Board held that exercised options to extend the contract created a second contract under which plaintiff could recover.

## CONCLUSION

Defendant's motion for summary judgment is granted in part, and denied in part, and plaintiff's cross-motion for summary judgment is granted in part, and denied in part. Plaintiff is not entitled to recover all prompt payment discounts taken by the Navy during the contract. However, plaintiff is entitled to recover the overdiscounted amount, $3603.68, plus interest on that amount under the Prompt Payment Act, running from the time the overdiscounts were taken until December 22, 1986, when the claim was filed with the CO. 31 U.S.C. § 3906. Plaintiff is also entitled to interest under the Contract Disputes Act on the amount of the discount improperly taken, from December 22, 1986, when the claim was filed with the CO, until the claim is paid. 41 U.S.C. § 611.

The parties shall file, within 30 days, a joint statement of the amount of interest due under the PPA on the overdiscounted amount. The court will then direct the clerk to enter judgment. Costs are awarded to plaintiff.